OPINION

An alternative writ was issued to review the Respondent Court’s release of an ar-restee who was refused bail by an arresting police officer and jailed beyond thirty-six (36) hours, pending charges and an arraignment during a lengthy court closure. Finding the Respondent Court ordered the release without jurisdiction and contrary to statutory authorization prior to the filing of the criminal complaint, the Court issued a Writ of Superintending Control.
I
Benson Holmes, Real Party in Interest (RPI), was cited and arrested at the scene for driving under the influence of intoxicating liquor (14 N.N.C. § 707(A)) and homicide by vehicle (14 N.N.C. § 703) on or about 4:45 p.m., Friday, October 25, 2013. The Respondent Court was closed through the weekend and for the next four business days from October 28-31, 2013 due to the annual Judicial Branch Conference in Albuquerque, New Mexico, which required mandatory attendance by all court staff. The arresting police officer, refusing to admit RPI to bail, placed a hold (a “do not release” request) on RPI under his authority pursuant to 17 N.N.C. § 1812. RPI was detained through the weekend. The following Monday, October 28, 2013, the Prosecutor by letter to the Window Rock Navajo Department of Corrections (Corrections) requested that RPI be continuously held until 5:00 p.m. whenever the court re-opened, or until 5:00 p.m., Friday, November 1, 2013. Attached to the letter was an unfiled motion to deny release pursuant to 17 N.N.C. § 1812(A)(4), alleging RPI committed an offense of homicide by vehicle, which would constitute a felonious offense under 18 U.S.C. § 1153. Due to closure of the court, the motion was not actually filed until November 1, 2013.
On October 29, 2013, the Public Defender, on behalf of RPI,[1] faxed an unfiled *352 motion for RPI’s release to the hotel where the judicial conference was being held, marked for the judge’s attention. The Public Defender contended RPI was being detained in violation of 17 N.N.C. § 1805, stating that the statute provides that no person shall be detained for longer than thirty-six (36) hours without a court order. Notably, material facts regarding the offense for which RPI was being held, homicide by vehicle, were not set forth in the motion. However, a document entitled “Additional Facts for the charge of driving under the influence of intoxicating liquor” was attached to the motion specifying that “The bicyclist died at the scene.” The judge granted the unfiled motion that same day, finding good cause to release RPI on bail by personal recognizance. RPI was released from detention on October 29, 2013.
In response to the release, on November 1, 2013, the Prosecutor filed a petition for a writ of superintending control, contending the judge abused her discretion in an egregious way by releasing RPI through an ex parte order, which revoked a lawfully placed hold on RPI in disregard of 17 N.N.C. § 1812(A)(4). Asserting there is no adequate remedy at law because RPI had already been released without conditions, the Prosecutor requested that this Court issue a writ of superintending control to quash the Order of Immediate Release and to order RPI’s return to detention until such time when an arraignment and a bail hearing can be held. We issued an alternative writ ordering the Respondent Court to appear before the Court to show cause why the writ should not be made permanent.
A hearing on the writ was held on November 7, 2013. Representatives from the Respondent Court, the Office of the Chief Prosecutor, and the Office of the Public Defender made appearances. At the conclusion of the writ hearing, we issued a permanent Writ of Superintending Control against the Respondent Court and announced an opinion would follow. On January 13, 2014, noting the parties had argued only statutory law but merely alluded to administrative procedures, we asked the parties to supplement their briefs with any written administrative policies, regulations, or procedures concerning 17 N.N.C. § 1815. The Court also asked Corrections, a non-party in this writ action, to file a brief. Supplemental briefs were filed but only Corrections, through the Navajo Nation Department of Justice, filed administrative policies as to “36-Hour Holds,” The Court now issues its decision by opinion.
II
The Supreme Court has jurisdiction to issue extraordinary writs pursuant to its authority under 7 N.N.C. § 302. The Court previously stated a writ of superintending control may be issued 1) where there is no plain, speedy and adequate remedy at law, and 2) when the trial court-abuses its discretion in an egregious way that only immediate action by this Court will remedy the damage done to a party. Wood v. Window Rock Dist. Ct., 8 Am. Tribal Law 252, 256-57 (Nav.Sup.Ct.2009) (internal citations omitted).
In determining whether a permanent writ is warranted against the Respondent Court, we considered the following issues: 1) whether the court had jurisdiction to act prior to the filing of a criminal complaint; and 2) whether the court was authorized to admit persons to bail during a time when the court was not in session.
*353 Ill
Under Navajo Nation law, a criminal action commences by the filing of a complaint with the court. Nav. R. Cr. P. 8(a). Whether or not a court has jurisdic-tion is determined from the allegations in the complaint. The complaint must contain essential facts, including jurisdictional facts, constituting the offense. Nav. R. Cr. P. 8(b)(2). When a complaint has not been filed with a court, an action has not been properly commenced; a court cannot determine nor establish jurisdiction. Before a court can hear a matter, it must have personal and subject matter jurisdiction. E.g., Nav. Transp. Serv., Inc. v. Schroeder, 7 Am. Tribal Law 516, 519 (Nav.Sup.Ct.2007). We have stated that “when jurisdiction has not yet been determined, a matter is not properly before a court; therefore the court lacks authority to sit in judgment over any portion of the matter....” Begay v. Nav. Eng’g and Constr. Auth., 10 Am. Tribal Law 45, 48 (Nav.Sup.Ct.2011).
The Court learned at the writ hearing that no criminal complaint setting forth essential facts and basis upon which RPI is to be charged had been filed in the Respondent Court at the time the judge ruled on the motion for release. With the non-filing of the criminal complaint, there was no properly commenced case in the docket of the Respondent Court by which the court could consider a motion therein. Additionally, there is no record of the motion ever being filed nor served upon the parties as required. Nav. R. Cr. P. 6(a); Nav. R. Civ. P. 5(a). The unfiled motion, lacking proper service, is a prohibited private communication with the judge, which requires the correspondence to “be returned to the sender by the clerk of the court as if not filed.” Nav.R.Cr.P. 5(c).[2]
The Respondent Court would have us accept the assertion that “Rule 10 of the Navajo Rules of Court specifically allows for a judge’s action in matters where there is no complaint and there is ‘no case.’ ” Kayenta District Court’s Supplemental Brief (January 31, 2014) (concurring with RPFs Supplemental Brief[3] at 14 (January 30, 2014)). Rule 10(1) may permit the entry of telephonic orders as to the release of prisoners while a presiding judge is out of the court or judicial district, however, subsection (3) of that same rule specifically states “A telephonic court order must be received from a judge authorized to [preside] in the district court and who has jurisdiction over a given matter.” Nav. R.C. 10(3) (emphasis added). We therefore reject the Respondent Court’s assertion of a roving judge who enters telephonic orders without jurisdiction. Jurisdiction is a pre-requisite to any judicial action.
The Respondent Court also states “orders may be issued concerning arrest; there is no case and no complaint at such point in time[,]” Kayenta District Court’s *354 Supplemental Brief (January 31, 2014) (concurring with RPI’s Supplemental Brief at 14 (January 30, 2014)), relying on Rule 10, a judge’s purported “inherent power and authority” and a far-fetched hypothetical.[4] We disagree, particularly with the unconstrained inherent power and authority of a judge in criminal proceedings governed by statutory requirements and proceedings. Under 17 N.N.C. § 1803, “Every judge shall have the authority to issue warrants to apprehend, such warrants to issue at the discretion of the court only after a written complaint shall have been filed, bearing the signature of the prosecutor.” (Emphasis added). Our laws require a written complaint before a warrant to apprehend is issued, further supporting our decision that a criminal action commences with the filing of a complaint.
Based on the reasons stated above, the Court holds the Respondent Court lacked jurisdiction to rule on the motion prior to the filing of the criminal complaint, and furthermore, accepted a prohibited ex parte communication, which are both clearly erroneous conclusions constituting an abuse of discretion.
IV
General provisions of the Navajo Nation Criminal Code concerning detention of persons arrested, specifically 17 N.N.C. § 1805, states:
No person shall be detained, jailed or imprisoned under any law of the Navajo Nation for a longer period than 36 hours, unless there be issued a commitment bearing the signature of a duly qualified judge of the Court of the Navajo Nation; provided, however, that an [sic] person arrested on a Friday, Saturday, Sunday, or a day before a holiday, who, having been given an opportunity within 36 hours after arrest to be released on bail does not provide bail, may be held in custody pending commitment for a reasonable additional period not to exceed eight hours following the opening of court on the next day it is in session. There shall be issued for each person held for trial, a temporary commitment and, for each person held after sentence, a final commitment on the prescribed forms.
The law essentially provides a person cannot be detained, jail or imprisoned for more than 36 hours unless that person is given an opportunity to be released on bail within 36 hours of being arrested and 1) there be a determination (commitment order) or 2) a result (no bail provided) that denies bail. From what we gather, the Respondent Court, recognizing only that there be issued a commitment order, asserts an unlawful detention in violation of 17 N.N.C. § 1805 justified its action. See Kayenta District Court’s Response at 5-6 (November 7, 2013).
The provision that no person shall be detained, jail or imprisoned under any law of the Navajo Nation for a longer period than 36 hours, unless there be issued a commitment order entered by a judge predates our courts for it was carried ovei from the Law and Order Code of the Courts of Indian Offenses. Amending the Procedure for Commitment and Release Pending Trial of Indians Arrested for Of *355 fenses Triable Before the Navajo Court of Indian Offenses, Navajo Tribal Council, Res. CF-18-58 (February 18, 1958). At that time, every person arrested had to appear before a circuit-riding judge within 36 hours of arrest to be released on bail pending an initial court appearance. Bail was by third-party guarantee and did not include release on one’s own recognizance.
Aware that persons arrested after 5:00 p.m., Fridays are not afforded the opportunity for bail until the following Monday while being unlawfully detained without a commitment order, the Navajo Tribal Council in 1958 authorized police officers to release prisoners on bail when courts are not in session over weekends and holidays. Id., ¶¶ 4 and 7. Needing to address specified times when no one is empowered to admit persons arrested to bail, Council inserted the authorization into 17 N.N.C. § 1805, which essentially provides: a person may be held for more than 36 hours pending commitment when that person is arrested on a Friday, Saturday, Sunday, or a day before a holiday, provided that person is given an opportunity within 36 hours of an arrest to be released on bail, and does not provide bail. Id., § 11.17N. The amendment being clearly contemplated by our leaders when a remedy by executive action was specifically authorized, we gather the legislative intent was to ensure, by judicial or executive action, that persons arrested be given an absolute, timely opportunity to be released on bail after an arrest.
Although police officers have long been authorized to release arrestees on bail pending charges and an arraignment, in an update of bail procedures in 1970, the Navajo Tribal Council specifically identified the head of “the Navajo Police Department” as the government official authorized and directed to appoint officers to admit persons to bail “during those times when the [court] is not in session.” Navajo Tribal Council, Res. CMY-36-70, ¶ 13 (May 14, 1970) (codified at 17 N.T.C. § 1815 (1977)). Today that provision reads:
The Director of the Department of Law Enforcement is authorized and directed to authorize officers to admit persons to bail, during those times when the District Court of the Navajo Nation is not in session.”
17 N.N.C. § 1815 (2005) (emphasis added). The 1992 Consent Decree has since authorized the Department of Corrections, the custodian of all persons arrested, to admit persons to bail pursuant to 17 N.N.C. § 1815. In re the Application of Silver v. Poke, No. WR-CV-235-92 (W.R.Dist.Ct. November 17, 1992); In re the Application of Silver v. Pake, No. A-CV-09-93 (Nav.Sup.Ct. November 9, 1993) (stating all district courts are bound by the Consent Decree). In addition to enacting 17 N.N.C. § 1815, the Navajo Tribal Council also enumerated grounds for refusing bail under 17 N.N.C. § 1812, which do not provide an exception to bail opportunities as required by 17 N.N.C. § 1805. Res. CMY-36-70, ¶ 10.
At the writ hearing, it appeared all parties were unaware of the administrative alternative and uncertain as to policies and procedures governing pre-charge detentions.[5] The lack of awareness drew subsequent erroneous conclusions that must be addressed. The Respondent Court, for example, states that “this Court’s apparent holding that if a court is not “in session” it has no authority to act is troubling.” Kay-enta District Court’s Response to [Public Defender’s] Petition for Reconsideration *356 of Writ of Superintending Control at 2 (December 13, 2013) (internal citation omitted) (reconsideration denied). The Respondent Court also states that “17 N.N.C. § 1815 limits a judge’s power to release prisoners to only times when the court is ‘in session’ and conversely to deny such power when the court is ‘not in session.’ ” Kayenta District Court’s Supplemental Brief (January 31, 2014) (concurring with RPI’s Supplemental Brief at 12 (January 30, 2014)). The legislative intent was not to impose limitations but to improve the efficiency of the criminal justice system. See Res. CF-18-58, ¶ 7. Accordingly, our decision in no way suggests that the only time a court can act is when it is “in session” nor does it forbid a court to act when the court is “not in session.” As stated above, a court has the authority to enter orders only after jurisdiction has been established.
In this case, RPI was arrested on a Friday before the court’s closure. The Respondent Court was closed through the weekend and unavailable to provide an opportunity for bail within 36 hours of RPI’s arrest as required by 17 N.N.C. § 1805. According to 17 N.N.C. § 1815, the Department of Corrections, the desig-nee of the Director of Department of Law Enforcement, was specifically authorized to admit RPI to bail when the district court was not in session. Despite the Respondent Court’s assertion that the judge considered and granted the motion ex parte because it appeared there was no response that could alter the fact that RPI was illegally detained, we concluded that the law, 17 N.N.C. § 1815, clearly provided for someone other than the Respondent Court to act when the court was not in session.
Based on the reasons stated above, the Respondent Court released RPI without authorization to do so, an error based on an erroneous view of the law, constituting an abuse of discretion.
The directive issued in 17 N.N.C. § 1815 and the policies and procedures furthering the administrative alternative, needs to be followed. This case arose to the attention of this Court because the Respondent Court failed to permit the administrative alternative to address the matter, the Public Defender failed to seek a release through the proper authority, the Prosecutor failed to submit a written notice[6] to deny release within 36 hours of RPI’s arrest, and Corrections, on its own authority, failed to implement its own policies and procedures by releasing RPI.
V
Despite the Respondent Court’s assertion that there is a plain, speedy and adequate remedy at law now that the complaint and motion to deny bail have been filed for consideration, we found a writ of superintending control is warranted not only for the reasons noted above, but for the reason that only an immediate action by this Court will remedy the delay caused by the unlawful release. Nine days had passed since RPI was released and the Respondent Court was no closer on the day of the writ hearing in serving RPI with the filed complaint and criminal summons, and holding an arraignment earlier than November 20, 2013.
At the conclusion of the writ hearing, we also found the Respondent Court abused its discretion, though not egregiously, for not all material facts were presented to the judge in the unfiled mo *357 tion. Nevertheless, though pretrial release and bail are matters rightly committed to the sound discretion of the trial court as conveyed in Apachito v. Navajo Nation, 8 Nav. R. 339, 344, 4 Am. Tribal Law 668 (Nav.Sup.Ct.2003), we cannot overlook the Respondent Court’s release of RPI without jurisdiction, an act not within a court’s discretion, and the Respondent Court’s erroneous release of RPI, an act not within the bounds of the law.
The Petitioner’s request to order the immediate arrest of RPI was denied. Instead, the Court issued a Writ of Superintending Control ordering the Respondent Court to immediately serve RPI with the filed complaint and criminal summons, and immediately hold an arraignment and bail hearing.

. The Public Defender purporting to act on behalf of RPI filed a motion for RPI’s immediate release without ever communicating with or obtaining RPI's consent. Responding only to information that RPI was being detained for more than 36 hours, the Public Defender told this Court at the writ hearing on November 7, 2013 that she represented RPI in the trial court only for the “filing” of the motion for immediate release and, after faxing the *352 motion, she informed RPI to seek other legal counsel. Though concerned with the Public Defender’s self-appointment as counsel, the Court will not address the impropriety.

. When the Court issued the permanent writ, the Court stated it need not address the issue of the ex parte communication. This opinion, however, is more detailed and now addresses the issue.

. A Supplemental Brief was filed on behalf of RPI by an attorney who did not file an entry of appearance in this original action and did not provide notice thereof to all other parties, as required by N.R.C.A.P. 4(d). The Court is therefore restricted to the pleadings properly filed in this original action and, from the record, RPI is pro se. The Court will not accept the Supplemental Brief as RPI's arguments. At the request of the Respondent Court, the Court will accept the arguments in the Supplemental Brief as the Respondent Court's arguments upon being informed the arguments could not be better stated and, instead of re-stating arguments already well-made, it concurs completely with the arguments in the Supplemental Brief.

. The hypothetical offered: “Suppose a person walking down the street, violating no law, is stopped by a police officer and arrested and thrown in jail for no reason at all. The officer files no charge, writes no ticket, but continues to keep the person in custody.” RPI Supplemental Brief at 14 (January 30, 2014). The Court will not waive jurisdictional requirements based on a hypothetical reasoning, especially one casting unwarranted culpability upon police officers.

. Only the Department of Corrections, through the Navajo Nation Department of Justice, filed administrative policies and procedures concerning 17 N.N.C. § 1815.

. The Consent Decree requires a written notice and a copy of the motion to deny release to be submitted to Corrections within 36 hours of arrest. Navajo Department of C or-rections, Uniform Policies and Procedures For Release of Inmates Arrested at 2 (August 1999).